UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ROBERT R. SALAZAR and MIRIAM GONZALEZ,

                      Plaintiffs,

        -against-

UNITED STATES OF AMERICA,

                      Defendant.
-------------------------------------------------------------x

No. 17-CV-3645 (GBD) (OTW)

**OPINION AND ORDER**

**ONA T. WANG, United States Magistrate Judge:**

This is an action for damages under the Federal Tort Claims Act arising out of Mr. Salazar's treatment at a hospital in the Department of Veterans Affairs New York Harbor Healthcare System ("VA Hospital") in 2015 and 2016. (Am. Complaint, ECF 18). Plaintiffs have moved to compel Defendant to produce a report ("the Report") prepared by the VA Hospital related to Mr. Salazar's medical treatment. Defendant argues that the Report is protected from disclosure under 38 U.S.C. § 5705 and 38 C.F.R. § 17.501. Plaintiffs argue that Defendant has failed to meet its burden to demonstrate that the document is privileged. At the Court's direction (ECF 45), Defendant provided the Report for *in camera* review on May 22, 2018. For the reasons discussed below, Plaintiffs' motion to compel is denied.

**I.    FACTS**

Plaintiffs allege that in October 2015, Mr. Salazar underwent a chest X-ray at the VA Hospital's Emergency Room, that the X-ray report showed an abnormality that needed follow-up, and that no follow-up was done. (Pls.' Letter, Apr. 3, 2018 (ECF 34)). Mr. Salazar's "Progress Notes" from the VA Hospital indicate that he was diagnosed with lung cancer around August 17,

1

2016, more than 10 months after his October 2015 abnormal chest X-ray. (ECF 34-1). The Progress Notes also indicate that "[a]fter a review of his chart the team found that the patient had an abnormal x-ray on 10/7/15 as part of ED visit after which he was discharged home. This report recommended a follow up CT scan but this was never done as the patient and his providers were not aware of the abnormal result. The above information was disclosed to the patient and his wife today." (ECF 34-1 at 2).

At deposition, Catherine Glasser, a nurse practitioner employed by the VA Hospital, testified that around August 19, 2016, she and the doctors treating Mr. Salazar had told him that they were sorry that the initial abnormal chest X-ray had been overlooked. (Glasser Dep. (ECF 34-3) at 58). Nurse Glasser also testified that a "safety commission" had conducted an investigation into Mr. Salazar's treatment at the VA Hospital. (Def.'s Letter, Mar. 22, 2018 (ECF 28), at 1; Glasser Dep. at 56-58). Nurse Glasser explained that the safety commission is a "patient safety review team that's made up of doctors and other people" who "look into any kind of situation that happened." (Glasser Dep. at 56-57). Glasser also testified that Kim Arslanian was part of the safety commission. (Glasser Dep. at 57). Defendant identifies Arslanian as a Performance Improvement Manager in the VA Hospital's Quality Management Department. (ECF 28 at 1).

Following Nurse Glasser's deposition, Plaintiffs requested that Defendant produce any report resulting from the investigation described by Nurse Glasser. Defendant responded that the investigation and resulting Report were protected from disclosure by 38 U.S.C. § 5705, 38 C.F.R. § 17.501(a)(1)(viii), and VHA Directive 2008-077, "Quality Management (QM) And

Patient Safety Activities That Can Generate Confidential Documents" (Nov. 7, 2008),[1] and provided a privilege log for the document. (*See* Def.'s Letter to Pls., Mar. 8, 2018 (ECF 28-2)).

## II. LEGAL STANDARDS

### A. The Statute

"It is well recognized that a privilege may be created by statute." *Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982); *see also* Fed. R. Evid. 501. Such a privilege should be "strictly construed so as 'to avoid a construction that would suppress otherwise competent evidence.'" *Baldrige*, 455 U.S. at 360 (citation omitted); *see also Pierce Cty. v. Guillen*, 537 U.S. 129, 144 (2003).

In 38 U.S.C. § 5705, Congress designated "[r]ecords and documents" that were created as part of a "medical quality-assurance program" by the Department of Veterans Affairs (the "Department" or "VA") to be "confidential and privileged." Section 5705 further states that such records and documents "may not be disclosed to any person or entity" except as otherwise provided in the statute. 38 U.S.C. § 5705(a).[2] The purpose of protecting medical quality assurance documents from disclosure is to encourage health professionals to be candid in their review of the quality of health care provided. In supporting the legislation, the Senate Veterans' Affairs Committee stated that "a failure to provide confidentiality for [such] reports could seriously undermine the value of the review process under the [quality assurance]

---

[1] *Available at* https://va.gov/vhapublications/publications.cfm?pub=1&order=asc&orderby=pub_Number (last visited June 7, 2018).

[2] A similar privilege exists for hospitals operated by the Department of Defense. *See* 10 U.S.C. § 1102; *In re United States*, 864 F.2d 1153 (5th Cir. 1989).

program—and, ultimately, adversely affect the quality of care being provided in VA health-care facilities." Report of S. Comm. on Veterans' Affairs, 96th Cong., Veterans' Disability Compensation and Housing Benefits Amendments of 1980 31 (Comm. Print 1980); *see also* Health Services Review Organization, Veterans Administration Proposed Rules, 46 Fed. Reg. 38540-01 (July 28, 1981), 1981 WL 100120 (noting that the statute "is intended to provide some limited protection against inappropriate disclosure of information generated by [the peer review] process and thereby encourage health care providers to conduct candid, reliable, valid and objective review activities").

The privilege is not absolute, however; § 5705(b) identifies situations where disclosure is authorized. 38 U.S.C. § 5705(b). Subsection 5705(b)(1) enumerates a list of authorized recipients. Subsection 5705(b)(2) protects personal identifying information of patients and Department employees in the event of disclosure authorized under § 5705(b)(1). Subsection 5705(b)(3) prohibits any "person or entity to whom a record or document has been disclosed under this subsection" from further disclosure "except for a purpose provided in this subsection." Subsections 5705(b)(4)-(6) cover situations not relevant here.

The statute also defines the term "medical quality-assurance program" as:

[W]ith respect to any activity carried out on or after October 7, 1980, a Department systematic health-care review activity designated by the Secretary to be carried out by or for the Department for either [improving the quality of medical care or improving the utilization of health-care resources in Department health-care facilities].

38 U.S.C. § 5705(c).

Finally, § 5705(d)(1) provides that, "the Secretary shall prescribe regulations to carry out this section," and § 5705(d)(2) provides that, "[a]n activity may not be considered as having

been designated as a medical quality-assurance program for the purposes of subsection (c)(2) of this section unless the designation has been specified in such regulations."

## B. The Regulatory Framework

The Department has promulgated regulations to effectuate the privilege created by 38 U.S.C. § 5705 in 38 C.F.R §§ 17.500 *et seq. See Jackson v. United State*s, 708 F.3d 23, 32 (1st Cir. 2013) ("38 U.S.C. § 5705 and 38 C.F.R. § 17.501 together make documents produced by the VA at focused reviews confidential and privileged").

Under 38 C.F.R. § 17.501(a), documents and parts of medical quality-assurance documents are protected from disclosure under 38 U.S.C. § 5705

> if they were produced by or for the VA in the process of conducting systematic healthcare reviews for the purpose of improving the quality of health care or improving the utilization of healthcare resources in VA healthcare facilities and meet the criteria in paragraphs (b) and (c) of this section.

The regulation then lists four classes of healthcare quality assurance reviews: "(1) Monitoring and evaluation reviews conducted by a facility; . . . (2) Focused reviews which address specific issues or incidents . . . ; (3) VA Central Office or Regional general oversight reviews to assess facility compliance with VA program requirements . . . ; and (4) Contracted external reviews of care." 38 C.F.R. § 17.501(a). Quality assurance documents that are asserted to be privileged as part of focused reviews or general oversight reviews under 38 C.F.R. § 17.501(a)(2) or (3) must have been so designated at the outset of the review.

Further, under 38 C.F.R. § 17.501(b):

> The Under Secretary for Health, Regional Director or facility Director will describe in advance in writing those quality assurance activities included under the classes of healthcare quality assurance reviews listed in paragraph (a) of this section. Only documents and parts of documents resulting from those activities which have been so described are protected by 38 U.S.C. 5705 and the regulations in §§ 17.500 through

5

17.511. If an activity is not described in a VA Central Office or Regional policy document, this requirement may be satisfied at the facility level by description in advance of the activity and its designation as protected in the facility quality assurance plan or other policy document.

Defendant further asserts that VHA Directive 2008-077, "Quality Management (QM) and Patient Safety Activities That Can Generate Confidential Documents," was promulgated in furtherance of 38 C.F.R. § 17.501(b) and that it provides additional guidance regarding the types of documents that are protected under 38 U.S.C. § 5705 and 38 C.F.R. § 17.501. Defendant asserts that the Report is an "occurrence screening" under 38 C.F.R. § 17.501(a)(viii), which is further described in VHA Directive 2008-077, and identified in an internal VA Hospital policy, Healthcare System Policy No. 00-13, Confidentiality of Quality Management (QM) and Patient Safety Records and Documents (October 2013).[3] The VHA Directive 2008-077 "expired" by its terms on November 30, 2013, and the parties agree that VHA Directive 2008-077 has not been replaced or updated.

It is undisputed that the Report satisfies paragraph (c) of the regulation because it "[i]dentif[ies], either implicitly or explicitly, individual practitioners, patients, or reviewers." 38 C.F.R. § 17.501(c)(1). Thus, the issue for the Court is whether the Report falls under 38 C.F.R. § 17.501(a)-(b).

**III. ANALYSIS**

"[T]he party invoking a privilege bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas, Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003); *Roybal v. United States*, 13-CV-610, 2014 WL 12597405, at *2 (D.N.M. Apr. 3,

---

[3] At the Court's direction (ECF 45), Defendant provided the Court and Plaintiff's counsel with a copy of this internal policy on May 22, 2018.

2014) (addressing claim of privilege under 38 U.S.C. § 5705 and noting that "the party asserting the privilege, bears the burden of demonstrating that it is justified in withholding the documents at issue.") (citation omitted). The Federal Rules of Civil Procedure require that

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). Thus, "[t]he United States, as the party asserting the VA quality assurance privilege, must provide sufficient information to enable the plaintiffs and the court to determine whether *each element* of the asserted objection is justified. A blanket claim of privilege does not suffice." *Bethel v. United States ex rel. Veterans Admin. Med. Ctr. of Denver*, 242 F.R.D. 580, 586 (D. Colo. 2007) (emphasis in original; internal quotation marks and citations omitted).

Defendant expressly made the privilege claim and provided a privilege log identifying the document and the grounds for withholding the document. (*See* ECF 28 and 28-2). Defendant has met its burden to demonstrate that the Report was created as part of a medical quality-assurance program because it meets the criteria in 38 U.S.C. § 5705 and 38 C.F.R. § 17.501(a)-(c). Plaintiffs do not contend, nor is there any basis to conclude, that the Report falls under any exception identified in the statute or regulations.

Defendant asserts that the investigation at issue here was conducted, and the Report generated, in connection with an "occurrence screening," a type of monitoring and evaluation

7

review under paragraph (a). *See* 38 C.F.R. § 17.501(a)(1)(viii). Defendant further argues that the Report satisfies paragraph (b) because occurrence screenings are described in VHA Directive 2008-077 and are identified as protected in the internal VA Hospital policy. The VHA Directive describes "occurrence screenings" as

> the screening of cases against a list of criteria that are specified, in advance, in a policy document from the Under Secretary for Health, VISN Director, or facility Director. Cases that involve one or more of the occurrences are reviewed to identify possible problems in patient care. Cases meeting the criteria may be entered into an ongoing occurrence screening database to be reviewed and analyzed regularly to identify patterns that may be problematic. The Under Secretary for Health, VISN Director, or facility Director may delete criteria that they have previously authorized in a policy document.

(VHA Directive 2008-077, at 3).

At deposition, Nurse Glasser testified that a "safety commission" or a "patient safety review team that's made up of doctors" and others conducted a form of review to investigate plaintiff's case. (Glasser Dep. 56-57). In discovery, Plaintiffs specifically requested the report that was created as a result of that review. The privilege log produced by Defendant is consistent with Nurse Glasser's description; it is described as a "Quality Management Clinical/Peer Review pertaining to Robert Salazar's treatment . . . ." (ECF 28-2 at 3) that was signed by a "peer reviewer" and by the Service Chief. The dates of those signatures are shortly after VA Hospital personnel diagnosed Mr. Salazar's lung cancer and realized that he had had an abnormal X-ray ten months earlier that had not been further investigated. Nurse Glasser's testimony and the log are also consistent with the description of the Report as part of an "occurrence screening," which VHA Directive 2008-077 identifies as the "screening of cases . . . to identify possible problems in patient care."

Plaintiffs argue that Defendant is not permitted to rely on VHA Directive 2008-077 and

8

its identification of "occurrence screening[s]" because the VHA Directive is expired.[4] The expiration of VHA Directive 2008-077 by its terms is not dispositive, however. Defendant has argued that the policies in the Directive remain in effect at the VA and that the VA intended to re-issue the Directive. (Transcript of Proceedings, Apr. 9, 2018 (ECF 35), at 11, 32). *Accord Workman v. United States*, 15-CV-14327, 2016 WL 3248513, at *2 n.1 (S.D. W. Va. June 13, 2016) ("[a]lthough . . . [VHA Directive 2008-077] was supposed to expire on November 30, 2013, Defendant [United States] confirm[ed] by affidavit that the directive was in effect at the time of Ms. Workman's fall and remains in effect today [in June of 2016]); *see also Doe v. United States*, 16-CV-2627, 2017 WL 1437298, at *7 (D. Kan. Apr. 24, 2017) (finding that an expired VHA Directive "was the federal policy that the VA was required to follow" until it was rescinded and replaced with a new policy document). Moreover, "occurrence screenings" are specifically identified in 38 C.F.R. § 17.501(a)(viii), and the VA Hospital maintains its own policy (Healthcare System Policy No. 00-13) that was not expired during the period at issue that provides "guidance regarding the confidentiality of specified documents resulting from Quality Management (QM) and Patient Safety activities carried out" by the VA Hospital. That internal policy also lists occurrence screenings as a type of protected monitoring and evaluation review and includes VHA Directive 2008-077 in its list of references. (Healthcare System Policy No. 00-13 at 5). Thus, Defendant's reliance on the VHA Directive as well as the VA Hospital's internal policy is sufficient to satisfy its burden to show that occurrence screenings are described in advance in writing under 38 C.F.R. § 17.501(b).

---

[4] By Plaintiffs' logic, any document described in VHA Directive 2008-077 cannot be protected from disclosure unless and until it is replaced with a new directive.

The Court also reviewed the Report *in camera* and finds that the contents of the Report are consistent with Defendant's representations. It appears to be a fillable, computer-generated form entitled "QUALITY MANAGEMENT CLINICAL/PEER REVIEW," on which some sections were completed electronically before the form was printed, and which also bears handwritten notes and signatures. Each page of the form, as Defendant had represented at oral argument, states, in its entirety:

> The documents, records, and other information contained herein, are confidential and privileged under the provisions of 38 U.S.C. 5705, and its implementing regulations. This material cannot be disclosed to anyone without authorization as provided for by that law or its regulations. The statute provides for fines up to $20,000 for unauthorized disclosures.

The Report is identified as an "occurrence screen" and identifies the type of screen it purports to be. Moreover, the contents and form of the Report align with Nurse Glasser's testimony and Defendant's representations to the Court that the Report was generated as part of the VA Hospital's quality management process.

Accordingly, Defendant has met its burden to demonstrate the Report is confidential and privileged under 38 U.S.C. § 5705 and 38 C.F.R. § 17.501(a)-(c) and the motion to compel is denied. [5]

**SO ORDERED.**

Dated: New York, New York
      June 7, 2018

                                              _s/ Ona T. Wang_
                                              **Ona T. Wang**
                                              United States Magistrate Judge

---

[5] Plaintiffs also argue that the contents of the Report may be used as "impeachment materials" at the time of trial (ECF 34, at 2). Plaintiffs do not cite any legal or factual basis for this argument and it is unpersuasive. This argument is similar to Plaintiffs' abandoned (ECF 37, at 2) and unconvincing argument that the privilege has been waived. *See Boparai v. Shinseki*, 09-CV-01164, 2010 WL 5200907, at *2 (E.D. Cal. Dec. 15, 2010) (finding "no basis to presume that the confidentiality cloaked upon [the] records by 38 U.S.C. § 5705 has been waived *or could be*") (emphasis added).