U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

86 Chambers Street
New York, New York 10007

June 10, 2019

**BY ECF**

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:    *Miriam Gonzalez v. United States*, 17 Civ. 3645 (GBD) (OTW)

Dear Judge Daniels:

    This Office represents the United States, the defendant in the above-referenced case (the "Government"). In accordance with the Court's instruction at the status conference held on May 1, 2019, that the parties could supplement their trial submissions by letter as appropriate, the Government writes to supplement its pretrial memorandum filed on August 27, 2018 (Dkt. No. 59), to account for developments since that date.

    **Background**

    Trial was previously scheduled to commence on September 4, 2018. On August 28, 2018, Plaintiff Robert Salazar passed away, and trial was adjourned to provide Plaintiff Miriam Gonzalez time to seek appointment as executor of his estate. (Dkt. No. 62.) On February 22, 2019, Plaintiff amended the complaint to reflect that Ms. Gonzalez now brings suit as executor of Mr. Salazar's estate as well as on her own behalf, and to add a wrongful death claim. (Dkt. No. 79-1.) In connection with her amendments to the complaint, Plaintiff sought leave to take additional discovery and designate additional expert witnesses. (Dkt. No. 71.) At the status conference held on February 27, 2019, the Court denied Plaintiff's request, except as to Plaintiff's claim for loss of services damages for the period after Mr. Salazar's death. The Court permitted Plaintiff to designate a new expert to opine on the value of those services, and for the Government to depose Ms. Gonzalez on that subject and designate its own expert witness. The parties completed that additional discovery on May 22, 2019.

    **Supplement to the Government's Pretrial Memorandum**

    The majority of the Government's pretrial memorandum is unaffected by events since August 2018. Briefly, as discussed in that memorandum, the Government has conceded that it owed a duty to Mr. Salazar and that the failure to diagnose Mr. Salazar with lung cancer in or around October 2015 was a departure from the standard of care. Accordingly, the sole issues to be decided at trial are whether the ten-month delay in diagnosis was the proximate cause of each of Mr. Salazar's claimed injuries, and, if so, the damages to be awarded. As discussed in the

The Honorable George B. Daniels
Page 2

Government's pretrial memorandum, because Mr. Salazar likely would have faced the same or a similar prognosis and undergone substantially the same or comparable treatment had he been diagnosed ten months earlier, the United States is not liable for Mr. Salazar's claimed injuries. Further, in the event the Court finds the United States liable, damages should be far less than the grossly inflated figure Plaintiff seeks.[1]

The facts and legal issues regarding causation remain as set forth in the Government's pretrial memorandum. With respect to damages, Plaintiff stated in the parties' proposed Joint Pretrial Order that she is seeking damages for medical expenses, pain and suffering, and loss of services. (Joint Pretrial Order (Dkt. No. 53) § III.A.)[2] The Government's position with respect to these categories of damages is also largely unchanged from that set forth in its pretrial memorandum: with respect each category, the Government can be liable only for those damages, if any, that stem from the ten-month delay in diagnosis, as opposed to the fact that Mr. Salazar had cancer in the first place. (*See* Pretrial Memorandum (Dkt. No. 59) at 10.)

With respect to the specific categories of damages Plaintiff seeks, Plaintiff's claim for medical expenses is now limited to past medical expenses, so Section II.B.iv of the Government's pretrial memorandum is no longer applicable. With respect to loss of services, Plaintiff now asserts a claim for lost services from the point of Mr. Salazar's death, on August 28, 2018. (Transcript of February 27, 2019 Conference ("2/27/2019 Tr.") at 7:7-9:5.)[3] The parties have each retained an expert to opine on the value of those services. Plaintiff's expert, Michael Soudry, does not account for the reality that, even if Mr. Salazar had been diagnosed in October 2015, at that point in time he already had lung cancer, and with it the need for treatment and a reduced life expectancy. Instead, in performing his calculations, Mr. Soudry assumes a normal life expectancy for an American male of Mr. Salazar's age at the time of the missed diagnosis and implicitly assumes that Mr. Salazar's cancer would necessarily have been cured, regardless of what stage it was in October 2015. (Anticipated Soudry Testimony.) Mr. Soudry further assumes that Mr. Salazar would have provided services to Ms. Gonzalez at a rate of four hours per weekday, or a total of twenty hours per week, until he was 84.1 years old, 2.5 years before his projected death at 86.6. (*Id.*) Mr. Soudry does not account for the fact that, regardless of his stage of cancer in October 2015, Mr. Salazar would have undergone treatment, which likely would have rendered him unable

---

[1] As noted in the Government's pretrial memorandum, while Plaintiff's interrogatory responses indicate that she is seeking in excess of $28,000,000 in damages, her damages are capped at $10 million—the amount sought in Plaintiffs' administrative claim. *See* 28 U.S.C. § 2675(b); (Pretrial Memorandum (Dkt. No. 59) at 1 n.1.)

[2] To the extent Plaintiff intended loss of services to encompass loss of society or consortium, that claim extends only to the date of Mr. Salazar's death, because under New York law a wrongful death claim encompasses only pecuniary injuries. *See Gonzalez v. N.Y.C. Housing Auth.*, 77 N.Y. 2d 663, 667-68 (1991).

[3] While Plaintiff appeared to assert a claim for lost services before Mr. Salazar passed away and trial was adjourned, Plaintiff's counsel clarified at the conference on February 27, 2019, that Plaintiff's claim for lost services is solely for the period following Mr. Salazar's death. (2/27/2019 Tr. at 7:7-9:5.)

The Honorable George B. Daniels
Page 3

to provide twenty hours of services per week for at least some period of time. (Anticipated Kennett Testimony.)

The Government's expert, Professor David Kennett,[4] by contrast, specifically considers in his analysis that, had Mr. Salazar been diagnosed in October 2015, he would have had lung cancer of some stage. Using Mr. Soudry's assumption of twenty hours of services per week, Professor Kennett calculates the value of the services Mr. Salazar would have been expected to provide in the scenarios in which he had Stage I cancer, Stage II cancer, or Stage III cancer in October 2015, using median life expectancy data from the American Joint Committee on Cancer. Even in the scenario where, as Plaintiff claims, Mr. Salazar had Stage I cancer in October 2015, the value of the lost services is at most $68,780 if the cancer was Stage IA or $29,127 if it was Stage IB. In the scenario where Mr. Salazar had Stage II or III cancer (which, as discussed in the Government's pretrial memorandum, is entirely possible), Plaintiff would not be entitled to any loss of services damages, because based on the median life expectancies, Mr. Salazar outlived the time during which he would have been expected to provide services. Put another way, projecting from the missed diagnosis in October 2015 the time an individual with Stage II or III cancer would be expected to be able to provide services, those periods expired before Mr. Salazar's actual death on August 28, 2018.

The estimates of the Government's expert are significantly more reliable than those of Plaintiff's expert, which simply ignore that Mr. Salazar had a serious, life-threatening disease in any possible scenario. Additionally, even Professor Kennett's projections are likely over-estimates, because it is unlikely that Mr. Salazar, a man who would be in his late 70s to 80s during the period in question, would have provided household services to Ms. Gonzalez at a rate of four hours per day—a rate significantly higher than the average for males of any age who do not have children and are not employed outside of the home. (Anticipated Soudry Testimony.) In light of the fact that, as the Government's lung cancer expert Dr. Ashish Saxena will testify, it is not possible to determine what stage of cancer Mr. Salazar had in October 2015, as well Professor Kennett's testimony, the Government submits that, in the event the Court awards loss of services damages, a damages figure of no more than $24,000 is appropriate.

---

[4] Professor Kennett is the Elizabeth Stillman Williams Professor of Economics at Vassar College, where he has been employed since receiving his Ph.D. in Economics from Columbia University in 1976.

The Honorable George B. Daniels
Page 4

    We thank the Court for its consideration of this matter.

                                                       Respectfully submitted,

                                                        GEOFFREY S. BERMAN
                                                        United States Attorney for the
                                                        Southern District of New York
                                                        *Attorney for Defendant*

                        BY:    /s/ *Rachael L. Doud*
                                                       RACHAEL L. DOUD
                                                       ANTHONY J. SUN
                                                       Assistant United States Attorneys
                                                       86 Chambers St., 3rd Floor
                                                       New York, New York  10007
                                                       (212) 637- 3274 / 2810
                                                       rachael.doud@usdoj.gov
                                                       anthony.sun@usdoj.gov